Lindsay G. Leavitt (029110)
lindsay.leavitt@gknet.com
Erin T. Jenkins (039689)
erin.jenkins@gknet.com
GALLAGHER & KENNEDY, P.A.
2575 East Camelback Road
Phoenix, Arizona 85016
Telephone: (602) 530-8000
Facsimile: (602) 530-8500
*Attorneys for Plaintiff*

# IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Reliance Hospitality, LLC d/b/a Reliance Hotel Group, a Delaware limited liability company, <br><br> Plaintiff, <br><br> v. <br><br> 5251 S. Julian Drive, LLC d/b/a Stay Tucson Inn and Suites, a Delaware limited liability company; Yaacov Amar, a married man; Yuki Smouha, a married man; Meyer Chetrit, a married man; John Does I-X; Jane Does I-X; Black Corporations I-X; and ABC Partnerships I-X, <br><br> Defendants. | No. <br><br> **COMPLAINT** |

Reliance Hospitality, LLC, d/b/a Reliance Hotel Group ("Reliance"), for its Complaint against Defendants 5251 S. Julian Drive, LLC, d/b/a Stay Tucson Inn and Suites ("Stay Tucson"), Yaacov Amar, Yuki Smouha, and Meyer Chetrit (collectively, "Owner Defendants"), and John Does I-X, Jane Does I-X, Black Corporations I-X, and ABC Partnerships I-X, alleges the following:

//

## INTRODUCTION

This is a fraudulent transfer case. In 2022, Reliance filed a Complaint against Stay Tucson related to Stay Tucson's breach of its hotel management agreement with Reliance. During discovery, Stay Tucson revealed it planned to sell its hotel for $7.1 million and distribute the net sales proceeds to its members, the Owner Defendants. Reliance informed Stay Tucson that rendering itself insolvent following the sale of its hotel would constitute a fraudulent transfer, but Stay Tucson did so anyways. Thereafter, a default judgment was entered against Stay Tucson in favor of Reliance in the amount of $217,585.53. By this lawsuit Reliance seeks to (1) claw back the net sales proceeds that were fraudulently transferred to the Owner Defendants in order to satisfy its default judgment, and (2) obtain an award of punitive damages against the Owner Defendants who knowingly and intentionally caused (and benefited from) the fraudulent transfers.

## PARTIES AND JURISDICTION

1. Reliance is a Delaware limited liability company that is a citizen of Arizona because its members are residents of Arizona.

2. Stay Tucson is a member-managed Delaware limited liability company that owned a hotel located at 5251 South Julian Drive, Tucson, Arizona 85706 (the "Hotel"). Upon information and belief, Stay Tucson is a citizen of New York and New Jersey, as per the citizenship of its Members.

3. At all relevant times Stay Tucson has, at all relevant times, three members: Yaacov Amar, Yuki Smouha, and Meyer Chetrit.

4. Upon information and belief, Yaacov Amar is a resident and citizen of New York and was at all times acting for the benefit of his marital community.

5. Upon information and belief, Yuki Smouha is a resident and citizen of New Jersey, and was, at all relevant times, acting for the benefit of his marital community.

6. Upon information and belief, Meyer Chetrit is a resident and citizen of New

2

York, and was, at all relevant times, acting for the benefit of his marital community.

7. John Does I-X, Jane Does I-X, Black Corporations I-X, and ABC Partnerships I-X (hereinafter "Fictitious Defendants") are those persons and entities whose relationships to the named Defendants and/or whose acts or omissions give rise to legal responsibility for the damages incurred by Reliance, but whose true identifies are presently unknown to Reliance. These persons and entities are hereby notified of Reliance's intention to join them as Defendants if and when additional investigation or discovery reveals the appropriateness of such joinder.

8. Upon belief, all Fictitious Defendants were residents of the State of Arizona, and/or were organized and existing under the laws of Arizona and doing business in the State of Arizona; and/or were foreign corporations, businesses, etc., qualified to do business within the State of Arizona and were doing business therein at all relevant times.

9. This Court has personal jurisdiction over the Owner Defendants due to their sufficient minimum contacts with Arizona including, but not limited to, the following:

    a. They owned and/or controlled the Hotel, which had operations entirely in Arizona.

    b. They had direct control over the day-to-day operations of the Hotel.

    c. They physically travelled to Arizona to purchase the Hotel.

    d. Two of the Owner Defendants, Mr. Amar and Mr. Smouha, individually and acting as agents of Mr. Chetrit, traveled to Arizona several times after they purchased the Hotel to view and observe the Hotel's operations.

    e. They opened a bank account at a Wells Fargo branch in Arizona on behalf of Stay Tucson for the Hotel to use as its depository bank. Each of the Owner Defendants was identified as an authorized signatory on that bank account.

    f. They formed Stay Tucson solely for the purpose of acquiring the Hotel, which served as lodging for individuals and families in Arizona.

   g. Upon information and belief, the Owner Defendants filed state tax returns with the Arizona Department of Revenue.

   h. They directly contracted with and/or caused Stay Tucson to contract with contractors and subcontractors to complete a renovation of the Hotel.

10. Through their acts and omissions, including those described in this Complaint, Stay Tucson and the Owner Defendants caused events to occur in the State of Arizona out of which Reliance's claims arise.

11. Jurisdiction is proper in this Court because there is complete diversity of citizenship between the plaintiff and defendants, and the amount in controversy exceeds $75,000.

## FACTUAL BACKGROUND

12. Reliance, a hotel management company, contracted with Stay Tucson to manage the Hotel pursuant to a Hotel Management Agreement (the "Agreement").

13. Under the Agreement, Stay Tucson was required to adequately fund the Hotel's operations, including payroll, benefits, etc.

14. Stay Tucson failed to adequately fund the Hotel, and Reliance was forced to cover some of the Hotel's operational expenses out of its own pocket. Stay Tucson later failed to reimburse Reliance for those (and other) expenses Reliance. .

15. As a result of Stay Tucson's conduct, Reliance terminated the Agreement.

16. On March 4, 2022, Reliance filed a breach-of-contract lawsuit against Stay Tucson in Pima County Superior Court (the "Lawsuit"). The case was thereafter removed to federal court in the District of Arizona.

17. On March 9, 2023, Reliance took a Rule 30(b)(6) deposition of Stay Tucson's designated representative, Defendant Yaacov Amar.

18. During the deposition, Mr. Amar disclosed that the Hotel was under contract to be sold for $7.1 million, and that the deal was expected to close within the following

weeks.

19. Mr. Amar further testified that the Hotel was Stay Tucson's sole asset and only source of revenue.

20. Mr. Amar confirmed that Stay Tucson would become insolvent after the Hotel was sold and all the sales proceeds were distributed to its members.

21. When Reliance's counsel asked Mr. Amar to confirm whether Stay Tucson would retain enough funds in its bank account after the sale to satisfy an unfavorable judgment in the Lawsuit, Mr. Amar stated he "did not know" and would not commit to doing so.

22. Reliance, through its counsel, warned Mr. Amar that Stay Tucson would be committing a fraudulent transfer under Arizona law if it distributed all of the sales proceeds to the Owner Defendants and left Stay Tucson insolvent and unable to satisfy an unfavorable judgment in the Lawsuit. Still, Mr. Amar would not commit to keeping any of the sales proceeds in Stay Tucson's accounts until the conclusion of the Lawsuit.

23. Thereafter, upon information and belief, Stay Tucson sold the Hotel and distributed the sales proceeds to the Owner Defendants.

24. In November 2024, Stay Tucson's counsel moved to withdraw from representing Stay Tucson in the Lawsuit, citing Stay Tucson's repeated failure to pay its legal fees. The Court granted the motion on January 23, 2025, and ordered Stay Tucson to find replacement counsel by February 28, 2025.

25. Stay Tucson failed to find replacement counsel by the deadline, thereby willfully violating the Court's order. As a result, United States Magistrate Judge Aguilera issued a Report and Recommendation recommending that the Court enter default judgment against Stay Tucson and award Reliance its attorneys' fees.

26. On June 23, 2025, the Court adopted and accepted Magistrate Judge Aguiler's Report and Recommendation, granting Reliance's motion for entry of default, entering

5

default judgment against Stay Tucson in the amount of $217,585.53 ($122,328.22 in damages plus $95,257.31 in attorneys' fees and costs), and awarding Reliance post-judgment interest (the "Default Judgment").

27.   However, upon information and belief, Stay Tucson is insolvent and unable to satisfy the Default Judgment because the Owner Defendants caused Stay Tucson to distribute the net sales proceeds to themselves fully knowing (and despite having specifically been warned by Reliance's counsel) that doing so would constitute a fraudulent transfer under Arizona law.

## COUNT ONE
### Fraudulent Transfer (A.R.S. §§ 44-1004(A)(2) and 44-1005)

28.   Reliance incorporates by reference all previous allegations herein.

29.   Reliance is a judgment creditor of Stay Tucson per the Default Judgment.

30.   Upon information and belief, the Owner Defendants caused Stay Tucson to sell its only asset—the Hotel—and to transfer the net proceeds of the sale to the Owner Defendants, despite knowing that Reliance had an outstanding, significant claim against Stay Tucson for money damages.

31.   The transfer was made after Reliance filed the Lawsuit and in the midst of the subsequent litigation.

32.   Stay Tucson refused to retain sufficient capital after the sale to satisfy an unfavorable judgment from the Lawsuit.

33.   Stay Tucson did not receive reasonably equivalent value in exchange for its transfers of money to the Owner Defendants—in fact, the transferring of the net sales proceeds to the Owner Defendants rendered Stay Tucson assetless and insolvent, without any way to satisfy the Default Judgment.

34.   The Owner Defendants are insiders of Stay Tucson.

35.   As a result of each transfer and all transfers collectively, Stay Tucson was left

6

insolvent and without sufficient funds to satisfy the Default Judgment.

36. As per the 30(b)(6) deposition of Stay Tucson's designated representative, Mr. Amar, the sale and subsequent transfers to the Owner Defendants constituted substantially all of the assets of Stay Tucson, resulting in Stay Tucson's insolvency within the meaning prescribed by A.R.S. § 44-1002.

37. Stay Tucson is presumed insolvent under A.R.S. § 44-1002(B) because it was not paying its debts as they became due, particularly to its legal counsel in the Lawsuit, to whom Stay Tucson owed nearly $180,000 in unpaid legal fees.

38. The sale and transfers occurred shortly before Stay Tucson incurred a substantial debt of which it had actual knowledge that it was likely to incur in advance of the transfer.

39. When Defendants transferred the assets, Defendants knew or reasonably should have known that Stay Tucson had or would incur debts beyond its ability to pay as they became due.

40. As a direct and proximate result of these transfers, Reliance has suffered damages in an amount to be proven at trial.

41. As a result of Defendants' conduct, Reliance is entitled to any or all of the remedies provided for in A.R.S. § 44-1004 *et seq.*, including but not limited to avoidance of the transfers; garnishment of monies, property, or assets that are or will be owed or payable to any or all of the Defendants; attachment or other provisional remedies against and with respect to property of those entities; an injunction against any further transfers of the transferred monies or other property or assets of the Defendants; punitive damages against the Owner Defendants because their actions were done with malice and an intent to defraud and deceive, as well as any other relief necessary to make Reliance whole.

## **PRAYER FOR RELIEF**

WHEREFORE, Reliance requests that judgment be entered in its favor as follows:

1  A. Ordering judgment in favor of Reliance and against Defendants for Reliance's damages in an amount to be proven at trial;

B. An award of punitive damages against the Owner Defendants.

C. Avoiding the transfers from Stay Tucson to Owner Defendants to the extent necessary to satisfy Plaintiff's claims;

D. Garnishment of monies, property, or assets that are or will be owed or payable to any or all of the Defendants;

E. Attachment or other provisional remedies against and with respect to property of any or all of the Defendants;

F. An injunction against any further transfers of the transferred monies or other property or assets of Defendants;

G. An award of prejudgment and post-judgment interest under A.R.S. § 44-1201 until the judgment is satisfied;

H. An award of Plaintiff's costs, disbursements and attorneys' fees under A.R.S. §§ 12-341, 12-341.01, the Agreement, and any other applicable contract, law, statute or rule; and

I. For such other and further relief as the Court and jury deem just and proper.

RESPECTFULLY SUBMITTED this 8th day of July, 2025.

GALLAGHER & KENNEDY, P.A.

By: */s/Lindsay G. Leavitt*
Lindsay G. Leavitt
Erin T. Jenkins
2575 East Camelback Road
Phoenix, Arizona 85016
*Attorneys for Plaintiff*

8

10437398v1/41864-0005